UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STANTON HARRY MCCAIN II,

           Petitioner,

   v.

DONALD R. HOLBROOK,

           Respondent.

Case No. C18-328-RAJ-MLP

REPORT AND RECOMMENDATION

## I. INTRODUCTION

Petitioner initiated this 28 U.S.C. § 2254 habeas action *pro se* in March 2018. (*See* Pet. (Dkt. # 1).) Upon screening, the Honorable James P. Donohue determined that the petition may be barred by the one-year statute of limitations and ordered Petitioner to show cause why the action should not be dismissed. (Dkt. # 6 at 1.) After Petitioner filed his third motion for extension of time because he did not have access to his legal materials, Judge Donohue appointed the Office of the Federal Public Defender to represent Petitioner for the limited purpose of responding to the show cause order. (*See* Dkt. ## 18, 20, 21.) The matter was transferred to the undersigned after Judge Donohue's retirement. (Dkt. # 27.)

On August 30, 2019, Petitioner responded to the order to show cause and submitted evidence in support of his claim that he was entitled to equitable tolling of the statute of limitations. (OTSC Resp. (Dkt. # 53).) After being granted an extension of time, Respondent filed an opposition brief and supporting evidence. (Opp. (Dkt. # 59); *see also* Dkt. ## 60-64.) Petitioner timely filed a reply. (Reply (Dkt. # 65).) Having carefully considered the parties' briefs and evidence, the balance of the record, and the governing law, the Court recommends that Petitioner's habeas petition be DENIED, a certificate of appealability be DENIED, and this action be DISMISSED with prejudice.

## II.   BACKGROUND

The one-year statute of limitations began to run on January 31, 2006, the date the conviction for which Petitioner is incarcerated became final.[1] (OTSC Resp. at 2; Dkt. # 53-1; Opp. at 5.) At this time, he was housed at the Stafford Creek Corrections Center. (Dkt. # 59-1 at 147.) On February 27, 2006, he was transferred to the Airway Heights Corrections Center ("AHCC"). (*Id.*) On September 7, 2006, 219 days after the statute of limitations commenced, Petitioner filed a personal restraint petition in the Washington Court of Appeals, thus tolling the limitations period.[2] (OTSC Resp. at 2-3; Dkt. # 53-2; Opp. at 5-6.) On August 30, 2007, Petitioner was transferred to a private prison in Minnesota. (Dkt. # 59-1 at 147.) On February 5, 2008, the Washington courts disposed of his personal restraint proceedings, and the statute of limitations began to run again. (OTSC Resp. at 3; Dkt. # 53-3; Opp. at 6.) Petitioner's federal habeas petition was due 146 days later on June 30, 2008. (OTSC Resp. at 3.)

---

[1] Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner has one year from the date his conviction becomes final to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1).

[2] AEDPA's one-year limitations period is statutorily tolled while a properly filed petition for post-conviction review is pending in state court. 28 U.S.C. § 2244(d)(2).

On June 23, 2009, Petitioner was returned from Minnesota to Washington State Department of Corrections ("DOC") custody at the Monroe Correctional Complex. (Dkt. # 59-1 at 146.) During the next several years, Petitioner was transferred multiple times between DOC facilities. (*See id.* at 38-46.) Petitioner has presented evidence that he was deprived of his legal materials for large periods during this time. (*See* Dkt. # 54-4 (2015 email exchange between DOC employees documenting Petitioner's deprivation of property); Dkt. # 54-5 at 14-31 (Petitioner's grievances regarding property issues from 2006, 2009, 2011-2015, June 2018, and July 2018); Dkt. # 54-7 (McCain Decl. addressing property issues); Dkt. # 54-15 (4/21/14 letter from AHCC Superintendent addressing property issues).)

On June 29, 2017, Petitioner was transferred from the Coyote Ridge Corrections Center ("CRCC") to the main or general population at the Washington State Penitentiary ("WSP"). (Dkt. # 59-1 at 138; Dkt. # 62 at 4; Dkt. # 62-1 at 2.)[3] On March 5, 2018, while Petitioner was still housed in the general population at the WSP, he filed the instant habeas petition, 3,535 days (nearly ten years) after the statute of limitations expired. (*See* Dkt. # 59-1 at 138; Dkt. # 1; OTSC Resp. at 3.)

---

[3] Petitioner has submitted a declaration of Janet Stanton, a paralegal at the Office of the Federal Public Defender, in which she attests: "Based on review of extensive medical and discipline records, in addition to Attachment A, an estimate of Mr. McCain's placement in either IMU/Administrative Segregation, or the Infirmary/Inpatient Medical . . . is as follows: . . . Admin Segregation: June 29, 2017 to August 14, 2018." (Dkt. # 53-5 at 3.) The attachments to Ms. Stanton's declaration establish that Petitioner was transferred from CRCC to WSP general population on June 29, 2017, and that he was transferred from WSP general population to the intensive management unit ("IMU") at the WSP on April 11, 2018, over a month after he filed this action. (*Id.* at 8.) Ms. Stanton does not explain why her attached evidence directly contradicts her claim that Petitioner was in administrative segregation between June 29, 2017, and August 14, 2018. Given DOC records and other evidence establishing that Petitioner was in general population between June 29, 2017 and April 11, 2018 (*see* dkt. # 59-1 at 138; dkt. # 62 at 4; dkt. # 62-1 at 2), the Court declines to credit Ms. Stanton's "estimate" of the dates when he was in administrative segregation. *See Buffalo v. Sunn*, 854 F.2d 1158, 1165 (9th Cir. 1988) ("A district court conducting federal habeas review should not ordinary attempt to resolve contested issues of fact based on affidavits alone *unless there is other evidence in the record dispositive of the issue . . . .*").

REPORT AND RECOMMENDATION - 3

### III. DISCUSSION

Petitioner acknowledges that he filed the instant federal habeas petition nearly ten years after the expiration of the statute of limitation. (OTSC Resp. at 1.) He argues, however, that due to a constellation of factors, he is entitled to equitable tolling of the statute of limitations or, at a minimum, an evidentiary hearing on the issue. (*Id.* at 3-18.) Alternatively, he argues that the untimeliness of his petition should be excused based on actual innocence. (*Id.* at 18-19.) For the reasons discussed below, Petitioner's arguments are unavailing.

#### A. Equitable Tolling

The one-year statute of limitations governing federal habeas petitions is subject to equitable tolling in appropriate circumstances. *Holland v. Florida*, 560 U.S. 631 (2010). The Ninth Circuit has made clear that equitable tolling is justified in very few cases, noting that "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002). A petitioner bears the burden of showing that equitable tolling should be applied. *Id.* at 1065.

To receive equitable tolling, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "[T]he requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude application of equitable tolling.'" *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting *Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008)). A petitioner must also establish that the extraordinary circumstance was, in fact, the reason the federal habeas petition was untimely. *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003).

Petitioner contends that extraordinary circumstances outside his control prevented him from timely filing his federal habeas petition. (OTSC Resp. at 4-15.) He argues (1) he is entitled to equitable tolling during the time he was housed in Minnesota without access to Washington legal materials; (2) he is entitled to equitable tolling during the time he was kept in the IMU and/or the prison infirmary without access to legal materials; and (3) even if his time in Minnesota, the IMU, and the prison infirmary are insufficient to toll the statute of limitations long enough to render his petition timely, the conduct of prison officials in preventing him from accessing his legal materials during the pendency of this action show that he should be generally entitled to equitable tolling for the entirety of his incarceration up to the date on which he filed his petition. (*Id.*) Petitioner also argues that he has been nothing if not diligent about pursuing his legal remedies, citing evidence that he routinely grieved the lack of access to his legal materials. (*Id.* at 16.)

The Court need not address all of Petitioner's arguments to conclude that he is not entitled to equitable tolling for the entire period between the expiration of the statute of limitations and the filing of this action. Petitioner does not argue and the Court finds no basis to grant equitable tolling for the 219 days between the date his conviction became final and the date he filed his personal restraint petition. Thus, at issue here is the 146 days between the disposition of his personal restraint petition and the expiration of the statute of limitations. But even if the Court were to assume that Petitioner was entitled to equitable tolling between the disposition of his personal restraint petition on February 5, 2008, and his June 29, 2017 transfer to the WSP, he does not show extraordinary circumstances between his transfer and March 5, 2018, when he filed his habeas petition, a period of 249 days.

As discussed above, the record establishes that during these 249 days, Petitioner was housed in the general population at WSP, not administrative or medical segregation. On August 11, 2017, Petitioner met with his counselor to request that his property be transferred from the CRCC to the WSP. (Dkt. # 59-1 at 123.) His counselor determined that he had sufficient funds in his postage account and initiated the transfer the same day. (*Id.*) Petitioner never filed a grievance or kite complaining about a delay in the transfer, nor has he submitted a declaration or other evidence establishing that he did not promptly receive his requested materials. (*See* Dkt. # 53-5 at 13-31 (no grievances filed between 6/29/2017 and 3/5/2018); Dkt. # 59-1 at 162-265 (same); Dkt. # 53-7 (McCain Decl. complaining about access to legal materials but failing to raise any issue regarding 2017 transfer from CRCC to WSP); Dkt. # 53-12 (McCain Decl. addressing current issues regarding access to legal materials); Pet. at 18-21 (verified petition explaining untimeliness but not raising any issue occurring after his transfer to the WSP in June 2017)[4].) Nevertheless, he did not file his federal habeas petition until over 200 days after his counselor requested his property. Accordingly, the Court concludes that Petitioner fails to present evidence establishing that external forces during this window of time caused the untimeliness of his federal petition, rather than his own negligence.

Petitioner nevertheless argues that the documented difficulties he had obtaining his legal materials over the years establish a "pattern of behavior and practice [that] tends to show that [he] has likely been deprived of access to his materials throughout the limitations period . . . ." (OTSC Resp. at 9; *see also* Reply at 4 ("McCain has never truly had meaningful access to his legal materials.").) Petitioner's claim is refuted by the fact that he was able to prepare and file his federal habeas petition and therefore necessarily had access to sufficient legal materials prior to

---

[4] Courts may treat allegations in a verified petition as an affidavit. *Laws v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003).

doing so. And as discussed above, Petitioner's counselor requested his materials be transferred over 200 days before Petitioner filed his petition, and Petitioner never complained about not promptly receiving his property. Petitioner also spends significant briefing discussing documented difficulties he had prior to his 2017 transfer to the WSP and difficulties that arose after he filed his petition. (OTSC Resp. at 9-15; Reply at 3-6.) But, as noted, these arguments and the supporting evidence does not address the relevant window of time.

Petitioner argues further that his medical issues constitute extraordinary external factors (OTSC Resp. at 7-8), but the medical evidence in the record is from 2011 (*see* dkt. # 55) and therefore does not address the relevant period. Petitioner contends that there were periods when his "physical condition rendered researching and drafting a habeas petition largely impossible" (OTSC Resp. at 8), but he does not submit an affidavit or other evidence establishing when these periods occurred, much less that they occurred during the relevant window of time. Moreover, Petitioner would have had personal knowledge of any external force that prevented him from filing while in general population at the WSP in 2017 and 2018, and yet he did not file a declaration addressing this period.

Finally, Petitioner argues that he has presented sufficient evidence to warrant an evidentiary hearing on the issue of equitable tolling at which he can "further develop the facts underlying his equitable tolling arguments . . . ." (OTSC Resp. at 18; *see also id* at 8, 15; Reply at 10-11.) He contends that he "has made a good-faith allegation that he has been routinely and systematically deprived of his legal items throughout the period in which the statute of limitations would have run and that he has been diligent in attempting to obtain his legal materials and pursue his habeas corpus action." (OTSC Resp. at 18.) Petitioner also maintains

that there are additional documents in his legal materials that he has been unable to access that "may" support his equitable tolling arguments. (*Id.* at 9 n.1.)

Petitioner cites *Roy v. Lampert*, 465 F.3d 964 (9th Cir. 2006), in which the Ninth Circuit stated that "[a] habeas petitioner . . . should receive an evidentiary hearing when he makes 'a good faith allegation that would, if true, entitle him to equitable tolling.'" *Id.* at 969 (quoting *Laws v. Lamarque*, 351 F.3d 919, 921 (9th Cir. 2003)). More recently, however, the Ninth Circuit has explained that *Roy* and *Laws* did not "establish a rule that a petitioner is entitled as a matter of law to an evidentiary hearing upon making a prima facie showing that would, if true, entitle him to equitable tolling." *Orthel v. Yates*, 795 F.3d 935, 940 (9th Cir. 2015). Rather, the cases "provide a more nuanced rule that further factual development may be required when a petitioner makes a good-faith allegation that tolling is warranted, depending on the sufficiency of the record that was before the district court." *Id.* The *Orthel* court explained that *Roy* and *Laws* "contain seemingly broad mandatory language, but their holdings and reasoning are fact-bound." *Id.* In *Roy*, an evidentiary hearing was warranted based on the record's conflicting affidavits, and in *Laws*, the record was "patently inadequate" to evaluate the strength of the *pro se* prisoner's claims in his verified petition. *Orthel*, 795 F.3d at 940 (citing *Roy*, 465 F.3d at 975, and *Laws*, 351 F.3d at 921, 924). Thus, where there is an "amply developed record," there is no need for an evidentiary hearing. *Roberts v. Marshall*, 627 F.3d 768, 772-73 (9th Cir. 2010) (explaining that because district courts have limited resources, to require evidentiary hearings when there is already "sufficient evidence in the record to make the relevant determination is needlessly wasteful").

The record in this case is sufficiently developed, and Petitioner has had ample opportunity to discover and present evidence in support of his equitable tolling claims. The Court

REPORT AND RECOMMENDATION - 8

appointed counsel to represent him in November 14, 2018, and granted extensions of time until August 30, 2019, to file his response to the order to show cause. (Dkt. ## 21, 53.) During this time, counsel requested and obtained over 5,500 pages of public disclosure documents from the DOC related to Petitioner's medical history, disciplinary history, grievances, and kites, in addition to other records. (Dkt. # 53-5 at 3.) The parties have filed hundreds of pages of evidence with the court. (*See* Attachments to OTSC Resp.; Attachments to Opp.; Dkt. ## 60-64.) Petitioner has submitted multiple affidavits. (*E.g.* Dkt. ## 53-7, 53-12.) Yet, none of this evidence establishes that external forces prevented Petitioner from filing during the relevant period identified above, even though Petitioner would have had personal knowledge of any external impediments and could have submitted an affidavit. Petitioner's claim that he "may" have additional documents that would support his equitable tolling argument is insufficient to warrant an evidentiary hearing. Given that the record is amply developed, the Court recommends that Petitioner's request for an evidentiary hearing be denied.

### B. Actual Innocence

There is an equitable exception to the statute of limitations for a credible showing of actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). Successful actual innocence claims, however, are rare given the demanding standard. *Id.* "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find his guilty beyond a reasonable doubt."[5] *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is demanding and rarely met). To make a credible claim of actual innocence, a petitioner must "support his allegations of constitutional error with

---

[5] "New" evidence is not limited to newly discovered evidence and includes evidence that was available but not presented at trial. *Griffin v. Johnson*, 350 F.3d 956, 963 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 9

new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. "The habeas court then considers all the evidence, old and new, incriminating and exculpatory, admissible at trial or not" and "makes a probabilistic determination about what reasonable, properly instructed jurors would do." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (internal quotation, alteration, and citation omitted); *see also Schlup*, 513 U.S. at 327-38 (in reviewing new evidence of actual innocence, courts are "not bound by the rules of admissibility that would govern at trial") (quoted source omitted).

In support of his actual innocence claim, Petitioner cites to Grounds 4 and 5 of his petition.[6] (OTSC Resp. at 18-19.) In Ground Four, Petitioner alleges he was denied his right to have witnesses testify on his behalf, specifically Otis Hayden and Leslie McCain, whose testimony Petitioner claims would have shown "the falsity of the state[']s claim" and impeached the victim. (Pet. at 11.) In Ground Five, Petitioner alleges he was denied his right to present evidence favorable to his defense, including the victim's psychiatric file, evidence of the victim's prior false rape allegations and fears of her husband's family, an answering machine tape recording of the victim and her husband plotting the false charges against Petitioner, five police reports that would have impeached the victim's testimony, and evidence that the victim told investigators shortly before trial that she wanted to continue to see Petitioner and that she feared her husband's family. (*Id.* at 12.) According to the petition, this evidence was withheld from the jury by his trial counsel and the prosecutor. (*Id.*)

---

[6] Petitioner's briefing also references Ground 6 (OTSC Resp. at 19), but it appears this may have been in error. In Ground Six, Petitioner alleges he was denied a fair trial by an impartial jury, asserting that the judge refused to excuse a prospective juror who had been raped and that the prosecutor misled the jury venire during voir dire into believing Petitioner was a murderer and child molester. (Pet. at 13-14.) This claim does not allege actual innocence based on new evidence.

REPORT AND RECOMMENDATION - 10

The problem with Petitioner's actual innocence claim is that he fails to present any actual evidence, much less new exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence. His arguments are based entirely on his own allegations. Although he identifies Mr. Hayden and Ms. McCain as potential witnesses, he does not provide the Court with any of their own statements. He does not present the victim's psychiatric file or the police reports. He does not offer evidence of the victim's alleged false rape allegations, fear of her husband's family, or pre-trial desire to continue seeing Petitioner. He also does not present the alleged answering machine tape recording.[7] Because Petitioner fails to present new evidence, his actual innocence claim fails. *See, e.g.*, *Jones v. Lackner*, No. 12-10176, 2014 WL 2812492, at *15 (C.D. Cal. Jun.16, 2014) (rejecting petitioner's actual innocence claim where petitioner did not provide any "new evidence" that was not presented at trial); *Garivay v. Long*, No. 13-6416, 2014 WL 2215879, at *7 (C.D. Cal. Mar. 4, 2014) ("[P]etitioner has not presented any *actual* evidence, let alone any new reliable evidence, that demonstrates that he is actually innocent. His bare assertions are entirely insufficient to exonerate him or prove that a different individual committed the crimes for which he was convicted." (emphasis in original)), *R & R adopted*, 2014 WL 2215882 (C.D. Cal. May 29, 2014); *Fernandez v. Long*, No. 13-242, 2013 WL 5486779, at *12 (C.D. Cal. Sept. 27, 2013) (same); *Trejo v. Ollison*, No. 11-0478, 2012 WL 590024, at *4 (C.D. Cal. Jan. 9, 2012) (rejecting actual innocence claim where petitioner based his claim on his reinterpretation of trial testimony and asserted he could obtain affidavits from witnesses to support his reinterpretation but did not present any actual evidence to the court), *R & R adopted*, 2012 WL 590022 (C.D. Cal. Feb.21, 2012).

---

[7] In his personal restraint petition, Petitioner recounts the conversation the answering machine allegedly recorded and claims, without supporting evidence, that the tape was either willfully destroyed or withheld by the prosecution. (*See* Dkt. 59-1 at 63-66.)

Petitioner nevertheless argues that his allegations are sufficient to overcome the "low threshold" necessary for an evidentiary hearing at which he can establish his actual innocence. (OTSC Resp. at 19.) He does not, however, cite any case law in support of his claim that an evidentiary hearing is required when a habeas petitioner fails to present new evidence in the first instance. Because there is no new evidence in the record, an evidentiary hearing is not necessary to resolve Petitioner's actual innocence claim. Accordingly, the Court recommends that Petitioner's request for an evidentiary hearing on his actual innocence claim be denied.

## IV.  CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the Court concludes that Petitioner is not entitled to a certificate of appealability on any of the issues raised in his response to the order to show cause.

## V.  CONCLUSION

The Court recommends that Petitioner's habeas petition be DENIED as untimely, that a certificate of appealability be DENIED as to all issues raised in Petitioner's response to the order to show cause, and that this action be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

1  Objections to this Report and Recommendation, if any, should be filed with the Clerk and
2  served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and
3  Recommendation is signed. Failure to file objections within the specified time may affect your
4  right to appeal. Objections should be noted for consideration on the District Judge's motions
5  calendar for the third Friday after they are filed. Responses to objections may be filed within
6  **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be
7  ready for consideration by the District Judge on January 31, 2020.
8  The Clerk is directed to send copies of this Report and Recommendation to the parties
9  and to the Honorable Richard A. Jones.
10  Dated this 15th day of January, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge